**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| SUSAN M. DESIMONE, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) No.1:09-cv-01421-WTL-MJD |
| | ) |
| QUICKEN LOANS, INC. et al., | ) |
| | ) |
| Defendants. | ) |

**Entry Discussing Motion to Dismiss and
Motion for Summary Judgment of
Quicken Loans, Inc., Title Source, Inc., and Justin Fendelet**

On October 9, 2009, DeSimone filed a complaint (the "Complaint") in the Decatur Superior Court against Quicken Loans, Inc. ("Quicken Loans"), Title Source, Inc. ("Title Source"), Justin Fendelet ("Fendelet"), Pat McLeod, Countrywide Mortgage ("Countrywide"), Bank of America, Fannie Mae, Julie Noonan, and JN Appraisals. The case was assigned cause No. 16D01-0910-CT-228. The defendants removed the case to this court on November 16, 2009, alleging diversity jurisdiction. On December 2, 2009, Bank of America, Countrywide, and Fannie Mae filed a motion for a more definite statement. That motion was granted on March 10, 2010. As a result, on April 5, 2010, DeSimone filed a supplement to her original complaint (the "Supplemental Complaint").

Quicken Loans, Title Source, and Fendelet filed a motion to dismiss pursuant to Rule 12(b)(6) and Rule 9(b) with a motion for summary judgment pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. For the reasons explained in this Entry, their motion [43] is **granted**.

The claims asserted in the Complaint and Supplemental Complaint against Quicken Loans, Title Source, and Fendelet are bank fraud, mail fraud, wire fraud, internet fraud, RICO, IND. CODE § 35-43-5-3 (deception), Indiana Lender Liability Act, Truth in Lending Act ("TILA"), Real Estate Settlement Procedures Act ("RESPA"), civil conspiracy, fraud, constructive fraud, and fraudulent misrepresentation. As to most of these claims, the moving defendants seek dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). These defendants also seek summary judgment and dismissal under Rule 9(b) as to the claims of fraud, fraudulent misrepresentation, and constructive fraud. The court will discuss each claim in turn.

*Legal Standards.* To survive a motion to dismiss under Rule 12(b)(6), a complaint must "plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *EEOC v. Concentra Health Svcs., Inc.,* 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 560-63 (2007)). "The complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Bissessur v. Indiana University Bd. of Trustees,* 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Twombly,* 550 U.S. at 557). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).

If the moving party successfully carries its burden, the non-moving party must "go beyond the pleadings" and present specific facts which show that a genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). This may be done through the designation of specific facts in affidavits, depositions, answers to interrogatories or admissions. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992). If the non-moving party fails to make a sufficient showing on an essential element of its case on which that party will bear the burden of proof at trial, the moving party is entitled to judgment as a matter of law. *See Celotex,* 477 U.S. at 322-23.

The defendants' motion was filed on May 25, 2010, but it did not include the proper Rule 56 notice to the *pro se* plaintiff. On February 16, 2011, the court provided DeSimone with the notice required by *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), and Local Rule 56.1(h). DeSimone filed a supplement to her prior response, including evidentiary materials and affidavits.

*Undisputed Facts.* For purposes of the motion to dismiss, all well-pleaded facts are taken as true. For purposes of the claims on which McLeod seeks summary judgment, the court considers the portions of the expanded record which comply with the requirements of Rule 56(c) to determine which facts are undisputed for purposes of the motion for summary judgment, or if disputed, considers those facts in the light most favorable to the non-movant, DeSimone. The well-pleaded and/or undisputed facts are as follows:

! DeSimone owned a hair salon for many years in New Jersey. Sometime in or before 2007, she decided she wanted to relocate. She found several homes online to consider, one of which was located at 413 North Franklin Street, Greensburg, Indiana (the "Real Estate"). She visited the Real Estate in August 2007 and loved the home and the town of Greensburg. The Real Estate's listing price was $329,900. She made an offer of $315,000, and it was accepted. DeSimone intended to relocate and live in the home in Indiana.

! On October 10, 2007, DeSimone executed a promissory note (the "2007 Note") in the amount of $283,500.00 in favor of Quicken Loans. The 2007 Note reflects a loan of the same amount from Quicken Loans to DeSimone, the proceeds of which were used by DeSimone to purchase the Real Estate. Quicken Loans employee Fendelet served as DeSimone's loan officer for this loan transaction.

! DeSimone gave information to Fendelet over the telephone and information was typed on to the application for the loan. Although the application states that DeSimone's monthly income was over $16,000 a month, she never told Fendelet that that was her income. In fact, she did not earn nearly that much money. She signed a form to allow Quicken Loans to obtain a copy of her tax returns to verify income if it was needed. She alleges that none of the information was ever verified. To secure the Note, DeSimone granted Quicken Loans a mortgage on the Real Estate (the "2007 Mortgage").[1]

! *Bank Fraud, Mail Fraud, Wire Fraud and Internet Fraud.* DeSimone argues that the moving defendants committed bank, mail, wire and internet fraud throughout the processing of the mortgage loans. There is no private cause of action for bank fraud under 18 U.S.C. §1344, mail fraud under 18 U.S.C. §1341, wire fraud under 18 U.S.C. §1343, or for internet fraud. *See Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408-09 (8th Cir. 1999); *Federal Sav. and Loan Ins. Corp v. Reeves*, 816 F.2d 130, 138 (4th Cir. 1987); *Griffin v. City of Milwaukee*, 2010 WL 4723420 at *7 (E.D.Wis. Nov. 15, 2010); *Park Nat'l Bank of Chicago v. Michael Oil Co.*, 702 F.Supp 703, 704 (N.D.Ill. 1989). Such claims could only be brought by the government as criminal charges. Accordingly, these claims are dismissed for failure to state a claim upon which relief can be granted.

---

[1] The moving defendants allege in the "Relevant Facts" section of their motion the following: "The 2007 Mortgage was subsequently assigned by Quicken Loans to Countrywide Bank, F.S.B. ("Countrywide")." The defendants do not cite to any evidence to support this allegation. In addition, the defendants allege that "At closing, the 2007 Mortgage debt was satisfied. Quicken Loans again subsequently assigned the 2008 Mortgage to Countrywide, which was by then known as B.A.C. Home Loans Servicing, L.P. ("Bank of America"). Bank of America subsequently assigned the 2008 Mortgage to Fannie Mae, but remained the loan servicer." Again, the court is not directed to evidence that supports these statements. DeSimone alleges that she was not notified of the assignments of the loans.

*Racketeer Influenced and Corrupt Organizations Act ("RICO")*. "Congress passed RICO in an effort to combat organized, long-term criminal activity." *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). To establish a private civil action for RICO violations, a plaintiff must show four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Id.* "In order to curb widespread attempts to turn routine commercial disputes into civil RICO actions, courts carefully scrutinize the pattern requirement to forestall RICO's use against isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law." *Id.* (internal quotations omitted). DeSimone does not allege any long-term pattern of criminal activity. This case is about the purchase of a single parcel of real estate. Accordingly, any RICO claim against the moving defendants is dismissed for failure to state a claim upon which relief can be granted.

*Deception Ind. Code § 35-43-5-3.* A person who suffers a pecuniary loss as a result of a violation of criminal statute IND. CODE § 35-43 *et seq.*, may bring a civil action for treble damages and costs against the person who caused the loss. *See* IND. CODE § 34-24-3-1. To recover civil damages, the claimants must prove by a preponderance of the evidence all of the elements of the underlying criminal act. *Heartland Resources, Inc. v. Bedel*, 903 N.E.2d 1004, 1008, n.2 (Ind.Ct.App. 2009). "Deception" is a qualifying crime under IND. CODE § 35-43-5-3. *Id.*

DeSimone contends that the moving defendants committed deception in that they "misapplie[d] entrusted property, property of a governmental entity, or property of a credit institution in a manner that the person knows is unlawful or that the person knows involves substantial risk of loss or detriment to either the owner of the property or to a person for whose benefit the property was entrusted." IND. CODE § 35-43-5-3(a)(3). DeSimone argues that these defendants engaged in fraudulent representations of her loan package to prospective lenders, investors and securities, and "placed the Plaintiff in the position of being held liable." If the loan proceeds in this case are considered to be the "property" for purposes of the deception statute, there is no allegation or evidence that such property was ever misapplied by any of these defendants. The funds were originally that of Quicken Loans. They were not "entrusted" to Quicken Loans or Title Source or Fendelet. *Cf., Longhi v. Mazzoni*, 914 N.E.2d 834, 845-46 (Ind.Ct.App. 2009) (acceptance of $50,000 as down payment earnest money by manager of development company, use of the money to finance development project rather than build home, and failure to return the funds to the purchasers after home was not built constituted deception under IND. CODE § 35-43-5-3(a)(3)). If the defendants had used the funds to do something other than purchase the Real Estate as intended by DeSimone, then a deception claim might have been viable. In this case, the loan proceeds were applied in a lawful manner, and in the precise manner sought when the loan applications were submitted: to purchase a home. Under these circumstances, DeSimone's claim of deception against these defendants fails to state a claim upon which relief can be granted.

*Indiana Lender Liability Act.* DeSimone alleges that the moving defendants violated the Indiana Lender Liability Act (the "ILLA") IND. CODE § 26-2-9-1, *et seq.* The ILLA is a statute of frauds that requires credit agreements to be in writing, to set forth all material terms and conditions, and be signed by the creditor and the debtor. IND. CODE §§ 26-2-9-4; 26-2-9-5. "The Indiana statute of frauds requires that agreements to lend money be in writing." *Classic Cheesecake Company, Inc. v. JPMorgan Chase Bank, N.A.*, 546 F.3d 839, 841 (7th Cir. 2008) (citing IND. CODE § 26-2-9-5). DeSimone does not allege that the loan agreement was not in writing. The complaint fails to state a claim upon which relief can be granted against these defendants as to any claim under the ILLA.

*Truth in Lending Act.* DeSimone alleges that there were "false documentations on the loan application, which are violations under the (TILA) Truth in Lending Act." This claim is also misplaced. "[T]he purpose of TILA is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Lucas v. U.S. Bank, N.A.,* 932 N.E.2d 239, 244-45 (Ind.Ct.App. 2010) (quoting 15 U.S.C. § 1601(a)). The annual percentage rate, the amount of the finance charge, the amount to be financed, the number and amount of payments, and due dates are some of the disclosures required by the TILA. *See* 15 U.S.C. § 1602(u). DeSimone does not allege any failure to make these types of disclosures. The complaint fails to state a claim upon which relief can be granted against these defendants as to any claim under the TILA.

*Real Estate Settlement Procedures Act.* "RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans. See 12 U.S.C. § 2601 (Congressional findings)." *Catalan v. GMAC Mortg. Corp*, 629 F.3d 676, 680 (7th Cir. 2011). "The statute imposes a number of duties on lenders and loan servicers." *Id.* "Most relevant here are the requirements that borrowers be given notice by both transferor and transferee when their loan is transferred to a new lender or servicer, 12 U.S.C. § 2605(b) and (c), and that loan servicers respond promptly to borrowers' written requests for information, § 2605(e)." *Id.*[2] "Likewise, Congress enacted RESPA 'to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges.'" *Lucas,* 932 N.E.2d at 245 (quoting 12 U.S.C. § 2601(a)). Under the statute, a "servicer" is a person who is responsible for receiving scheduled periodic payments from a borrower pursuant to the terms of a loan. 12 U.S.C. § 2605(i)(2), (3).

---

[2]The purpose of the statute is "to effect certain changes in the settlement process for residential real estate that will result--(1) in more effective advance disclosure to home buyers and sellers of settlement costs; (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services; (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and (4) in significant reform and modernization of local recordkeeping of land title information." 12 U.S.C. § 2601.

In her responses to the defendants' motion, DeSimone does not present any discussion of a claim under RESPA. Accordingly, the court considers this claim as having been abandoned. Even if it were not abandoned, there is no allegation or evidence that DeSimone suffered any actual damages from any alleged failure by these defendants to comply with RESPA. *See* 12 U.S.C. § 2605(f)(1). To the extent it has not been abandoned, this claim is dismissed for failure to state a claim upon which relief can be granted.

*Fraud, Fraudulent Misrepresentation and Constructive Fraud against Title Source.* As to the claims of fraud, fraudulent misrepresentation, and constructive fraud, Quicken Loans, Title Source and Fendelet seek dismissal for failure to plead with particularity under Rule 9(b) of the *Federal Rules of Civil Procedure*. To satisfy Rule 9(b), "a plaintiff ordinarily must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen, Co.,* 631 F.3d 436, 441-42 (7th Cir. 2011) (internal quotation omitted).

In her complaint, DeSimone alleges in paragraph 33 that:

Title Source Inc. has been under investigations with Quicken Loans for the rip off TSI Appraisal Services. Quicken terminated their appraisal agreements. Stated their appraisals were extremely high, Quicken Loans and TSI were on my loan, working hand in hand to get the deal through, no matter what fraud is committed.

As to defendant Title Source, the first sentence of paragraph 33 is the only factual allegation in the complaint. There is no description of what, when, where, or how Title Source committed any acts of fraud against DeSimone. DeSimone has not sufficiently alleged any claim of fraud against Title Source. Such claims are dismissed pursuant to Rule 9(b).

*Fraud, Fraudulent Misrepresentation and Constructive Fraud against Quicken Loans and Fendelet.* As to defendants Quicken Loans and Fendelet, the court finds that DeSimone has alleged sufficient facts to state claims of fraud, and therefore, the analysis of the fraud claims as to these two defendants will be based on the summary judgment standards under Rule 56.

"The essential elements of common law fraud are: 1) a material representation of past or existing facts which 2) was false 3) was made with knowledge or reckless ignorance of its falsity 4) was made with intent to deceive 5) was rightfully relied upon by the complaining party and 6) proximately caused injury to the complaining party." *American Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind.Ct.App. 2008). The elements of a claim for fraudulent misrepresentation are that: 1) the defendant made false statements of past or existing material facts; 2) the defendant made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; 3) the defendant made the statements to induce the plaintiff to act upon them; 4) the plaintiff justifiably relied and acted upon the statements; and 5) the plaintiff suffered injury. *Wise v. Hays*, 943 N.E.2d 835, 840 (Ind.Ct.App. 2011); *Hizer v. Holt*, 937 N.E.2d 1, 5 (Ind.Ct. App. 2010).

6

The torts of fraud and fraudulent misrepresentation are indistinguishable for purposes of analysis in this case. As to Quicken Loans and Fendelet, DeSimone alleges that the 2007 Mortgage was obtained by fraudulent misrepresentations on the application. For instance, the application shows that she earned $16,667.00 a month at her hair salon, which comes to $200,000 a year. DeSimone testifies in her affidavit that she never reported any income amount to Fendelet and that he completed the typed loan application, not her.[3] DeSimone further testifies that Fendelet and Quicken Loans were aware that she had co-signed a loan with her father, that her down payment was borrowed, and that she intended the home to be her primary residence, but the application does not reflect this information accurately. She states that she never had an account at Bank of America, and yet the application lists a "fictitious" account at that bank with $20,000 in it, "nv" ("not verified."). She states that she did have an account with Commerce Bank, of which Fendelet was aware, but he did not list it on the application. The loan application indicates that Fendelet took the information by telephone on October 10, 2007.

Fendelet has not presented an affidavit or other testimony in this case. He does *not* assert that the information *as it appears on the loan application*, including DeSimone's monthly income, was given to him by DeSimone. He does not argue that such information was accurate. Rather, he contends that by signing the application, DeSimone agreed that the information was "true and correct" by virtue of the Acknowledgment and Agreement portion of the application, Section IX. In other words, he argues that her fraud claim is barred because even if he placed inaccurate information on the application, it was DeSimone's responsibility to catch the "errors" and correct the information on the forms.[4]

In light of DeSimone's sworn testimony, for purposes of this motion, the court finds that a reasonable juror could find that Fendelet knew that certain information on the application was false when he processed the loan application and he proceeded with that knowledge in an effort to obtain approval for the loan. Even if that is the case, however, and without relying on Fendelet's Acknowledgment and Agreement defense, DeSimone's claims of fraud and fraudulent misrepresentation do not survive summary judgment.

DeSimone must produce sufficient evidence to create a genuine issue of fact that Fendelet made the false statements, or in this case, placed the false information on the application, with the intent to deceive DeSimone and in an effort to induce DeSimone to act on that information. She must also show that she justifiably relied on the information and suffered injury. It is here that her fraud claims falter. DeSimone knew the truth concerning

---

[3]The notation next to the figure of $16,667 on the application is "nv," presumably meaning "not verified."

[4]The issue here is not "if a mortgage loan officer places false income information on the application in an effort to convince underwriting to approve a loan, can the loan applicant who did not provide such information later be held accountable for civil or criminal liability?" Here, there is no claim against the loan applicant, DeSimone. Although under these circumstances DeSimone cannot prove a case of fraud against Fendelet, it does *not* mean by virtue of this ruling that DeSimone committed any type of fraud in providing information for the application.

her financial circumstances. She knew she did not earn $200,000 a year. She knew that she had to borrow equity from jointly held property for her down payment. She knew she did not have a $20,000 bank account with Bank of America. In short, DeSimone was not deceived by nor was she induced to act upon the inaccuracies on the loan application. DeSimone has not presented evidence sufficient to support all of the elements of her claims of fraud and fraudulent misrepresentation against Fendelet and Quicken Loans based on the 2007 loan application.

In addition to these allegations of fraudulent activity, DeSimone alleges fraud in connection with the "Second Home Rider." DeSimone asserts that she was not given the loan for which she applied, a primary residence loan. She argues that because she did not qualify for a primary residence loan, underwriting personnel required the lender to change the type of loan to a Second Home loan, and that she was not informed of this "last minute change." She further argues that the harm done to her with the switch was her loss of tax exemption benefits, her inability to live in the Real Estate full-time, and her inability to rent the Real Estate to others.

Although there is no evidence that DeSimone was given written notice of the Second Home Rider prior to closing, the loan application itself indicates in two places that the loan was not for a primary residence. (Section II and Section VII(l) of loan application). In addition, the Second Home Rider did not prevent DeSimone from residing in the Real Estate full-time. The rider required her to "occupy, and [ ] only use, the Property as Borrower's second home," but it also required her to "keep the Property available for Borrower's exclusive use and enjoyment at all times." It is true that the Second Home Rider did not permit any shared ownership arrangement or rental agreement, but when she purchased the Real Estate, it was DeSimone's intention to live there full-time.

DeSimone does not allege that Fendelet or Quicken Loans informed her that she could rent the property or that she had been approved for a primary residence loan. Therefore, the circumstances surrounding the Second Home Rider did not involve false statements. In addition, DeSimone has not demonstrated that if she had known she would not be permitted to rent the Real Estate, she would not have entered into the loans. Indeed, the Second Home Rider was imposed in 2007, and yet she proceeded with the 2008 refinance mortgage which also had the rider. Further, her alleged injuries are not supported. She alleges that at some point she had to move back to New Jersey because the Real Estate was uninhabitable. The Second Home Rider did not prevent her from renting the home if it was allegedly uninhabitable for anyone. Rather, the alleged condition of the home would prevent it from being rented. Lacking each of these essential components of her claim, Fendelet and Quicken Loans are entitled to summary judgment as to this claim of fraud.

The final type of fraud to be considered is constructive fraud. Unlike actual fraud, intent to deceive is not an element of constructive fraud. Rather the law infers fraud from the relationship of the parties and the surrounding circumstances. *American Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 246 (Ind.Ct.App. 2010). The five elements of constructive fraud under Indiana law are:

(i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Demming v. Underwood*, 943 N.E.2d 878, 892 (Ind.Ct.App. 2011) (internal quotation omitted).

With regard to the claim for constructive fraud, the first element DeSimone must prove is that Quicken Loans and Fendelet owed a duty to DeSimone due to their relationship. In this case, the relationship between DeSimone and Quicken Loans/Fendelet was only premised on the fact that DeSimone was a borrower of money from Quicken Loans and Fendelet was the loan officer employed by Quicken Loans. This type of relationship does not impose a special duty. *See American Heritage Banco,* 928 N.E.2d at 246 (generally, lender/borrower relationship is not a special relationship of trust and confidence). "Absent special circumstances, a lender does not owe a fiduciary duty to a borrower." *Wilson v. Lincoln Federal Sav. Bank*, 790 N.E.2d 1042, 1047 (Ind.Ct.App. 2003). Here, DeSimone has not shown any special circumstances that would give rise to a fiduciary relationship between herself and Quicken Loans as a lender or Fendelet as a loan officer. In addition, as to the fifth prong of a claim of constructive fraud, DeSimone has not shown that Quicken Loans and Fendelet gained some advantage at DeSimone's expense. Absent a genuine issue of fact as to these elements of constructive fraud, Quicken Loans and Fendelet are entitled to summary judgment as to this claim.[5]

## Conclusion

For the reasons set forth in this Entry, the motion to dismiss and motion for summary judgment filed by defendants Quicken Loans, Title Source, and Fendelet [43] is **granted** and the claims against these defendants are dismissed. This does not resolve all claims against all defendants. No final partial judgment shall issue at this time.

**IT IS SO ORDERED.**

Date: 06/20/2011

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[5]Because DeSimone's claims of fraud do not survive summary judgment, the court need not discuss any claim of civil conspiracy to commit fraud. "[C]ivil conspiracy is not an independent cause of action." *American Heritage*, 879 N.E.2d at 1115. *See Huntington Mortg. Co. v DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998)(defendant entitled to summary judgment where there was no unlawful act which could sustain claim of civil conspiracy).

Distribution:

Neal F. Bailen
STITES & HARBISON, LLP
nbailen@stites.com

Douglas B. Bates
STITES & HARBISON, LLP
dbates@stites.com

April O Davis
PLUNKETT COONEY, P.C.
adavis@plunkettcooney.com

Elizabeth J. Wysong
GOODIN ABERNATHY LLP
ewysong@goodinabernathy.com

Robert D. Zink
GOODIN ABERNATHY LLP
rzink@goodinabernathy.com

Susan M. DeSimone
904 Mason Run
Pine Hill, NJ 08021